IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CLIFTON L. CRUMBLISS,           §
TDCJ-CID NO. 606721,            §
                                §
            Plaintiff,          §
                                §       CIVIL ACTION NO. H-09-3706
v.                              §
                                §
MICHAEL C. DARDEN, et al.,      §
                                §
            Defendants.         §

**MEMORANDUM OPINION AND ORDER**

Clifton L. Crumbliss, an inmate of the Texas Department of
Criminal Justice - Correctional Institutions Division (TDCJ-CID),
filed a pro se Complaint Under the Civil Rights Act, 42 U.S.C.
§ 1983 (Docket Entry No. 1) ("Original Complaint") alleging that
TDCJ-CID officials were deliberately indifferent to his safety in
violation of his constitutional rights. The court ordered
Crumbliss to submit a More Definite Statement regarding his claims.
After considering his response, Plaintiff's Original Brief of
Action and Documentation (Docket Entry No. 11) ("More Definite
Statement"), the court ordered service on the named defendants:
Michael Darden, Sarfo Bonsu, Kathren Gonzalez, Warden Kenneth
Negbenebor, and Regional Director Steve Massie.

Bonsu, Gonzalez, Negbenebor, and Massie have filed a Motion
for Summary Judgment with Brief in Support (Docket Entry No. 31)

supported by records and affidavits.[1]    Crumbliss has filed a

response and has submitted his own evidence.  After consideration

of the pleadings and the records, the court has determined that the

defendants' Motion for Summary Judgment should be granted, and this

action should be dismissed.

## I.    Claims and Allegations

Crumbliss complains that he suffered a permanent leg injury

while he was being transported in a wheelchair van from the TDCJ-

CID Jester III Unit to his brother's funeral on April 7, 2009.

Crumbliss states he was confined to a wheelchair because his left

leg was in a halo brace following a recent operation.  The TDCJ-CID

officers involved in loading and transporting Crumbliss were Darden

(the driver), Bonsu (the security officer), and Gonzalez (the

supervising officer).

There is some variance between the Original Complaint (Docket

Entry No. 1) and the More Definite Statement (Docket Entry No. 11)

regarding the details of Crumbliss's allegations; however, the two

pleadings do present the same essential facts.  Just before noon

Bonsu took Crumbliss to the van at Jester III's front gate.

---

[1]Darden did not file an answer, and he is no longer employed
by TDCJ-CID.  (Attorney General's Advisory, Docket Entry No. 22)
Although summons was issued for service on Darden at his home
address, no answer was filed.  However, Crumbliss has submitted a
letter purportedly from Darden that sheds light on the incident in
question.    (See Crumbliss's Objection to Issuance of Summary
Judgment ("Plaintiff's Response"), Docket Entry No. 41.)

Although the van was equipped with a lift and some apparatus for securing a wheelchair, there were no tie-down straps or seat belts. (More Definite Statement, Docket Entry No. 11 at 4) Crumbliss allegedly was aware of the absence and knew that this violated TDCJ-CID's safety policies. Id. Despite the lack of tie-down straps Gonzalez assured Darden and Bonsu that "it would be okay" and that they had only one hour and fifteen minutes to get Crumbliss to the funeral, which was scheduled for 1:00 p.m. that day. Darden then loaded Crumbliss into the van without using any tie-downs.

After finishing their preparations Darden, Bonsu, and Crumbliss left in the van around noon with Darden driving. As they were going through the Jester complex, the van went over some speed bumps near the neighboring Jester II Unit. Crumbliss complains that Darden was driving too fast, which caused his wheelchair to go backwards on the third or fourth speed bump. As a result, the chair caught on a hinge and caused Crumbliss's left leg to rise, striking the interior of the van. Crumbliss could not reposition his leg because he was cuffed.

Darden asked Crumbliss if he was all right, and Crumbliss responded negatively. When Darden told Crumbliss that he would take him back to Jester III for treatment, Crumbliss responded that the damage was done and to take him on to the funeral. When they arrived at the funeral, Darden unloaded Crumbliss and discovered

-3-

that his leg was bleeding. Crumbliss used his coat to cover his leg, and Darden took him to the restroom several times during the funeral so that he could clean off the blood.

As they were preparing for the return, Crumbliss saw that there were straps on each side of the lift as he was loaded back into the van. He used the straps to hold himself during the trip back. However, Darden accelerated too quickly after one of the stops causing a strap to break. Consequently, Crumbliss's injured leg hit the front barrier of the van causing him to experience excruciating pain.

Crumbliss alleges that he experienced pain and cramping when he returned to Jester III and that a Physician's Assistant told him that he had pulled a muscle. Crumbliss had been scheduled to be transported to John Sealy Hospital in Galveston to have the halo removed two days after the funeral. However, he had to continue wearing it for an additional six weeks due to the accident.

Crumbliss seeks monetary damages for Darden's, Bonsu's, and Gonzalez's acts, which he contends violated his right not to be subjected to cruel and unusual punishment. He also sues Warden Negbenebor and Regional Director Massie for their role in an alleged conspiracy "to allow safety violation [sic] by unit employees." (Original Complaint, Docket Entry No. 1 at 3)

The Defendants' Motion for Summary Judgment includes evidence that contradicts Crumbliss's allegations. The defenses of qualified immunity and official immunity are also raised.

## II. **Summary Judgment Standards - Qualified Immunity**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must determine whether there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003).

In civil rights actions such as this proceeding where the non-movant is suing a government official, the issue of qualified immunity alters the summary judgment analysis.  See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010).  If the defense is raised, the court must make a two-step analysis.  Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009); Simmons v. City of Paris, Tex., 378 F.3d 476, 479 (5th Cir. 2004), citing Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001).  First, the court decides whether the plaintiff has alleged a constitutional violation. Second, if such a violation has been alleged, there must be a determination whether the conduct at issue was objectively reasonable in light of clearly established law at the time the incident occurred.  Id.  The non-movant has the burden of negating qualified immunity, but all inferences are made in the non-movant's favor.  Brown, 623 F.3d at 253.

## III.  Defendants' Arguments with Supporting Evidence and Crumbliss's Response

The defendants argue that they were not deliberately indifferent to Crumbliss's health and safety needs. Contrary to Crumbliss's allegations, they contend that proper care was taken to transport him to his brother's funeral and that if Crumbliss's knee was aggravated by the trip, there is nothing to support a claim that the defendants caused the injury.  They dispute Crumbliss's allegation that his leg injury was permanent and contend that he

-6-

was able to walk with crutches after the accident and that he was completely free of a wheelchair within two months of the accident.

The defendants argue that Warden Negbenebor and Director Massie cannot be held liable because they were not personally involved in the incident in question. The defendants also assert that Crumbliss cannot prevail against any of them for damages in their official capacities because the Eleventh Amendment bars jurisdiction over such suits against state officials.

The defendants have submitted the following records and affidavits to provide support for their arguments:

Exhibit 1:     Step 1 Grievance #2009136770
               Docket Entry No. 31-1

Exhibit 2:     Affidavit of Sarfo Bonsu
               Docket Entry No. 31-2

Exhibit 3:     Affidavit of Kathren Gonzalez
               Docket Entry No. 31-3

Exhibit 4:     Relevant Portion of Crumbliss's Medical
               Records, with business records affidavit,
               submitted under court seal
               Docket Entry No. 33

The defendants point to various inconsistencies in Crumbliss's version of the events in his Step 1 Grievance (Docket Entry No. 31-1 at 2), his Original Complaint (Docket Entry No. 1), and his More Definite Statement (Docket Entry No. 11). Among the discrepancies are details of when and how Crumbliss was injured; whether there were straps in the van and when they were discovered; and whether Darden's driving was so erratic that he caused one of the straps to break.

-7-

The defendants have also presented affidavits from Bonsu and Gonzalez, which directly contradict Crumbliss's account of the events. (Docket Entry Nos. 31-2; 31-3) Bonsu states that he observed Darden load Crumbliss into the van, which appeared to have the standard quality and quantity of straps for securing a wheelchair. (Docket Entry No. 31-2 at 2) He did not see anything wrong with the straps or the way Darden used them to secure Crumbliss in place. Id.

Bonsu rode in the front of the van with Darden while Crumbliss sat in the back on the 27-mile trip to the funeral. (Docket Entry No. 31-2 at 3) During the trip Bonsu did not see Darden engage in any unsafe or reckless driving, nor did he hear anything from Crumbliss. Id. Bonsu remembered several speed bumps and turns but did not otherwise recall anything out of the ordinary. Id. When they arrived at the funeral, Bonsu stood a few feet away while Darden opened the door and Bonsu observed that Crumbliss appeared upright in his chair and uninjured. Id.

Using the van's lift controls, Darden lowered Crumbliss to the ground, unstrapped him, and rolled him into the church where they remained for approximately one and one-half hours. Bonsu only discovered that Crumbliss was bleeding when Darden told him as they were leaving the church. Id. Bonsu also observed Darden strap Crumbliss in again to go back to Jester III where they took Crumbliss to the infirmary for medical attention. Id.

-8-

Officer Gonzalez's affidavit gives another account of steps taken to load and secure Crumbliss in the van. (Docket Entry No. 31-3)  She states that Crumbliss was in a standard wheelchair with one leg outstretched because he had recently undergone surgery.  Gonzalez recalls that the van had the standard type, quality, and quantity of straps and wheel locks used to secure patients.  She did not see anything wrong with the equipment or the way that it was used to secure Crumbliss.

Gonzalez states that she did not see Crumbliss that day after the van left for the funeral.  Id.  However, the next day Crumbliss reported to her that one of the straps had broken causing his chair to roll forward and hurt his leg.  Gonzalez denies that Crumbliss told her that his chair tipped over.  She also states that she asked him if he was okay, and he responded that he was fine.  Id.  She states that she then sent the van to the shop to have it checked out to make sure the straps and wheel locks were working properly.  Id.

A portion of Crumbliss's medical records has also been submitted under seal. (Docket Entry No. 33)  A "Nursing Protocol" or report, dated April 7, 2009, reflects that Crumbliss was seen by a health care worker after the trip to the funeral.  Id. at 3.  Crumbliss complained of pain in his groin area and reported that "his left leg fliped [sic] while going to [the] funeral." (Docket Entry No. 33 at 3)  Crumbliss stated that he thought he pulled a

-9-

muscle.   He was given Ibuprofen, and instructed to use a cold compress for 24 hours, followed by moist, warm heat to reduce discomfort.  Id.  In an Emergency Record entered the following day, Crumbliss reported that he was experiencing a throbbing pain in his groin area.  Id. at 4.  He was given Motrin, instructed to keep his leg elevated, and told to keep the orthopedic appointment scheduled for the following week.   Id.  A doctor's notes indicate that Crumbliss was seen on April 13, 2009, and encouraged to walk up to 50 yards daily despite his understanding that the orthopedic doctors told him he did not need to walk any longer.  Id. at 5.  It was also observed that Crumbliss's leg and knee were "ok and unaffected from the incident."  Id.  An entry made by the Physical Therapy Clinic, dated April 14, 2009, indicated that Crumbliss was able to walk with crutches for at least part of the day.  Id. at 6. The final entry, dated June 12, 2009, reflects that Crumbliss had completed his rehabilitation successfully and no longer needed a wheelchair as he was able to walk with crutches.  Id. at 7.

The defendants argue that the records show that they were not deliberately indifferent to Crumbliss's health and safety since their actions were objectively reasonable and that they did not knowingly ignore any unreasonable risk.  They also note that they took Crumbliss to the infirmary immediately after his trip to the funeral.  Therefore, they ask that the complaint be dismissed.

Crumbliss's response (Docket Entry No. 41) includes a letter purportedly sent to him by Darden.  Id. at 4-5.  The letter

-10-

substantiates Crumbliss's claim that there were no tie-down straps
in the van. Id. at 4. Darden found out that there were straps in
the other van but that the van was not available.    It was
understood that they needed to hurry to get to the funeral, and
Gonzalez told them to go on. Id.

Darden admits hitting the accelerator, which caused
Crumbliss's chair to "go sideways." Id. at 4. He stopped the van
to help Crumbliss back up and asked Crumbliss if he was hurt.
Darden told Crumbliss that they could take him to the infirmary,
and Crumbliss answered that he was fine.    Darden denies that
Crumbliss told either Bonsu or Darden that his leg was hurting
until they were returning from the funeral. Id. at 5. Darden
acknowledged Crumbliss's predicament and assured him saying, "ok
man we're on our way back now hold on." Id.

## IV.  **Analysis**

The defendants first point out disparities between the facts
asserted in Crumbliss's Complaint, More Definite Statement, and his
grievances and contend that such inconsistencies undermine the
credibility of his allegations.    The court is aware of the
incompatibilities between Crumbliss's various pleadings and notes
that Crumbliss has difficulty keeping the date of the incident
straight.   In his Original Complaint (Docket Entry No. 1 at 5), he
states that the incident occurred on March 7, 2009.   In his More

-11-

Definite Statement (Docket Entry No. 11 at 3), it occurred on April 7, 2009. While pleadings with disjointed accounts would not be acceptable from licensed attorneys, the court is mindful that these have been submitted by a middle-aged prisoner in poor health with limited education and without any assistance of counsel. Such pleadings are entitled to liberal construction. Propes v. Quarterman, 573 F.3d 225, 228 (5th Cir. 2009). Although inconsistent, Crumbliss's pleadings provide sufficient facts for the court to determine whether he was denied adequate protection while being transported with an obvious disability. The question remains as to whether the defendants' actions violated Crumbliss's constitutional rights. See Wilbert v. Quarterman, 647 F. Supp. 2d 760, 769 (S.D. Tex. 2009) (inmate's denial of seatbelt coupled with reckless driving by prison guard may violate Eighth Amendment).

Under the Eighth Amendment, prisoners have a right to "humane conditions of confinement" and prison officials are required to provide them with adequate food, shelter, clothing, and medical care, as well as necessary transportation. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001), citing Farmer v. Brennan, 114 S. Ct. 1970, 1976 (1994). However, the Eighth Amendment mandates "reasonable" safety, not "absolute" safety, and prison officials are not liable when they make good faith errors in assessing a potential danger. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998).

The issue is whether the defendants were deliberately indifferent to Crumbliss's safety while transporting him to his brother's funeral. See Estelle v. Gamble, 97 S. Ct. 285, 292 (1976). The standard for deliberate indifference is extremely high and requires more than a showing that the defendants were negligent or were mistaken in their judgment. Id.; Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 1999). To establish deliberate indifference in a prison conditions case, a prisoner must show that the prison officials (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir. 1999).

There is some dispute as to whether there were straps in the van and whether they were used properly or used at all. If determination of this issue were crucial to the outcome of the proceeding, there would be some question as to whether summary judgment should be granted. See Smith, 158 F.3d at 911. However, the lack of straps in the van is not the issue. The issue is whether defendants were aware that there were no straps and decided to ignore the absence knowing that they were exposing Crumbliss to unnecessary danger by having him ride without being strapped down. Brewer v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009).

Darden's letter (Docket Entry No. 41 at 4-5), submitted by Crumbliss, indicates that there were no straps in the van.

-13-

However, Crumbliss wanted to go to his brother's funeral and there was little time to spare. Crumbliss claims Gonzalez told them to go after assuring them that it was okay. If Gonzalez made such a judgment, it may have been ill-advised, but it was not deliberately indifferent. See Newton, 133 F.3d at 308 (official's mistaken assessment about the seriousness of a threat does not establish a civil rights violation). Therefore, Gonzalez cannot be held liable for the alleged failure to properly strap Crumbliss where there is no evidence that she was aware that he was in danger. Id. Similarly, there is no evidence that either Darden or Bonsu was aware of any danger.

Darden's driving may or may not have been a contributing factor in the events that injured Crumbliss. However, not every automobile accident involving a vehicle driven by a custodial or law enforcement officer is a civil rights violation. See Webber v. Mefford, 43 F.3d 1340, 1343 (10th Cir. 1994). Crumbliss's own evidence does not support a finding that Darden exhibited callous indifference to Crumbliss's safety. On the contrary, Darden states that he asked Crumbliss about his condition and offered to take him to the infirmary. (Docket Entry No. 41 at 4) Instead of seeking medical attention, Crumbliss said that he was fine and insisted that they proceed to the funeral. This evidence supports a finding that Darden had no knowledge that Crumbliss was hurt or was facing any unnecessary risk of injury. Even if Darden was mistaken in his assessment, he did not violate Crumbliss's civil rights. Newton,

-14-

133 F.3d at 308. In light of the evidence, Gonzalez, Darden, and Bonsu did not exhibit the requisite deliberate indifference to have violated Crumbliss's rights under the Eighth Amendment, and they cannot be held personally liable.

The record reflects that Warden Negbenebor and Director Massie were not involved in transporting Crumbliss. Therefore, they cannot be held personally responsible for the alleged accident even if a civil rights violation occurred. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Moreover, these defendants cannot be held liable merely because they may have had authortiy over the guards who actually transported Crumbliss. Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no respondeat superior liability under section 1983.").

To the extent that Crumbliss seeks monetary damages from the defendants in their official capacities, Eleventh Amendment bars such suits unless the state has waived its right. Cozzo v. Tangipahoa Parish Council--President Government, 279 F.3d 273, 280-81 (5th Cir. 2002). No waiver has been made.

For the reasons explained above, Defendants' Motion for Summary Judgment (Docket Entry No. 31) will be granted and this action will be dismissed.

## V. **Motion for Appointment of Counsel**

Crumbliss has moved for court-appointed counsel. There is no constitutional right to court-appointed counsel in civil rights

-15-

proceedings.  Jackson v. Cain, 864 F.2d 1235, 1242 (5th Cir. 1989).

Appointment of counsel is not warranted in this action due to the

elementary nature of its issues and the clear showing that

Crumbliss is not entitled to relief.  Wendell v. Asher, 162 F.3d

887, 892 (5th Cir. 1998).  The motion (Docket Entry No. 42) will be

denied.

## VI.  Conclusion

The court **ORDERS** the following:

1.    Plaintiff's Motion for Counsel, Ex Parte (Docket
      Entry No. 42) is **DENIED.**

2.    Defendants' Motion for Summary Judgment (Docket
      Entry No. 31) is **GRANTED.**

3.    Plaintiff's Complaint Under the Civil Rights Act,
      42 U.S.C. § 1983 (Docket Entry No. 1) is **DISMISSED
      with prejudice.**

**SIGNED** at Houston, Texas, on this 18th day of April, 2011.


                                   SIM LAKE
                        UNITED STATES DISTRICT JUDGE